## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alexander N. Robinson<br>4812 Ft. Totten Dr., N.E.,<br>Washington, D.C., 20011 | * <br> * <br> * <br> * |
| Plaintiff | *    Case number: |
| vs. | * <br> * <br> * |
| CAS 4000 KANSAS LLC<br>Serve on Aaron O'Toole, Esq.<br>1275 K Street, N.W., #1200<br>Washington, D.C., 20005 | *    JUDGE <br> * <br> * <br> * |
| & <br> Change All Souls Development Corp.<br>Serve on LeVart Seabron<br>2900B 14th St., N.W.,<br>Washington, D.C., 20009 | *    Jury Demand <br> * <br> * <br> * <br> * |
| Defendants | * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S COMPLAINT FOR VIOLATION OF FEDERAL FAIR LABOR STANDARDS ACT, D.C. MININUM WAGE ACT REVISION ACT OF 1992 AND WRONGFUL EVICTION AND BREACH OF CONTRACT

Plaintiff, Alexander N. Robinson, by and through his undersigned attorney, files this complaint against CAS Kansas LLC and Change All Souls Development Corp to recover damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201 et seq. ("FLSA") and for damages under the D.C. Minimum Wage Act Revision Act of 1992, D.C. 32-1001 et seq. ("DCMWA") as set forth below.

## PARTIES AND JURISDICTION

1. Plaintiff is an adult D.C. resident and at all times relevant, performed all work duties for Defendants in the District of Columbia.

2.  On or before March 29, 2013, Plaintiff lives at 4000 Kansas Ave., N.W., #2, Washington, D.C., 20011.

3.  The FLSA and DCMWA define "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." Plaintiff was working at CAS 4000 Kansas LLC as an employee as "on site property manager" to provide janitorial and easy maintenance jobs for CAS 4000 Kansas LLC (hereafter refer as "CAS LLC).

4.  Plaintiff started to work for Defendant CAS LLC as of 2009.

5.  Defendant, CAS 4000 Kansas LLC, is a registered D.C. company to own and rent the apartment units since 2008.

6.  Defendant Change All Souls Development Corp. (hereafter refer as "CAS Housing") is a D.C. registered company.  CAS Housing is related to CAS LLC.  They share offices, have the same staff members, monetary exchanges freely between those two companies and provide construction and all other supports between two companies. At all times relevant, CAS LLC and CAS Housing shared common management, ownership, and financial control in their operation of the multi-family residential rental properties in Washington, D.C., where plaintiff worked.  In other words, CAS Housing is the "alter ego" of CAS 4000 Kansas LLC.

7.  At various times during the course of Plaintiff's employment period, CAS, LLC operated several multi-family residential rental properties in Washington, D.C..  Plaintiff only worked in CAS 4000 Kansas Ave., N.W., Washington, D.C., 20009.  He was hired and worked as "on-site property manager" to conduct maintenance for CAS 4000 Kansas. Plaintiff was employed to perform property maintenance and related work duties.

8.   At all times during Plaintiff's employment period, LeVart Seaborn is Vice President of CAS LLC and a registered agent for CAS Housing.  Mr. Herbert Collins is the office manager who oversees the day-to-day operation of the CAS Housing and CAS LLC.

9.   At all times during the period of Plaintiff's employment, CAS, LLC and Collins had the power to hire, fire, suspend, and otherwise discipline Plaintiff.

10. At all times during the period of Plaintiff's employment, CAS LLC and Collins supervised Plaintiff's work duties to ensure Plaintiff's work was of sufficient quality.

11. At all times during the period of Plaintiff's employment, CAS LLC and Collins set and controlled Plaintiff's work schedule and requested him to sign the "employment agreement" on December 2, 2010.

12. At all times during the period of Plaintiff's employment, CAS LLC and Collins set and determined Plaintiff's rate and method of pay.

13. At all times during the period of Plaintiff's employment, CAS LLC and Collins maintained what few employment records exist relating to Plaintiff's or caused such records to be maintained.

14. At all times during the period of Plaintiff's employment, CAS LLC and Collins controlled, and were in charge of, the day-to-day operations of CAS LLC where Plaintiff performed work duties.

15. At all times during Plaintiff's employment, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of §3(s)(1) of the FLSA (29 U.S.C. §203(s)(1)).

16. Each year during Plaintiff's employment, Defendants' gross income exceeded $100,000.00 (one million dollars) and thus Defendants qualified as an "enterprise" within the meaning of §3(r) of the FLSA (29 U.S.C. §203 (r)).

17. At all times during Plaintiff's employment with Defendants, Plaintiff was an individual employee who, while engaged in his employment duties, handled, sold, and otherwise worked on goods and materials that were moved in or produced for commerce thus Plaintiff was an individual employee who was engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§206-207.

18. Pursuant to the foregoing, at all times, all defendants were Plaintiff's "employers", "joint employer", and "enterprise employer" for purposes of the FLSA and DCMWA.

19. This Court has jurisdiction over Defendants pursuant to §16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §1337 relating to "any civil action or proceeding arising under any Act of Congress resulting commerce." Subject matter jurisdiction is invoked under 28 USC §1331. Venue is proper pursuant to 28 U.S.C. §1391(b).

20. This court also has ancillary jurisdiction over Defendant's tenant's claim because he was illegally evicted as of March 29, 2013. See 28 USCA §1367

21. This Court also has ancillary jurisdiction over Defendant's breach of contract because he was promised to relocate to another place after he was left alone to guard the Defendant's property alone for two months after all the tenants moved out on January 31, 2013.

## EQUITABLE TOLLING

22. At all times during the course of Plaintiff's employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' place of business any poster or information that notified employees of the Federal or District of Columbia overtime compensation requirement.

22. At all times during the course of Plaintiff's employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' place of business any poster or information that notified employees of any enforcement remedies available to employees who are not paid by employers as required by Federal or District of Columbia law, including notification that the Department of Labor may recover back wages on behalf of employees or that underpaid employees have a private right of action to file a lawsuit against employers for nonpayment or underpayment of wages in violation of Federal and District of Columbia law.

23. At all times during the course of Plaintiff's employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified employees of the fact that Federal and District of Columbia law prohibits discriminating against, retaliating against, or discharging workers who files a complaint or participate in any proceeding to recover unpaid or underpaid wages under Federal or District of Columbia Law.

24. At all times during Plaintiff's employment, Defendants has never explicitly advised Plaintiff that Plaintiff was entitled to be paid for minimum wage and overtime hours worked each week in excess of forty (40) hours at the Federally and District of Columbia required overtime pay rate of one-and-one-half (1½) times his regular rate of pay.

25. In consideration of the foregoing, it is proper to toll Plaintiff's Federal and District of Columbia overtime claims to include the entirety of Plaintiff's employment with Defendants.

## FACTS

26. Alexander Robinson was employed by Defendant CAS LLC from January 2009 as a part-time worker and promoted as full time worker since around December 2010.

27. Mr. Robinson has been paid $65.00 every two weeks in 2009, along with a rental unit at 4000 Kansas.

28. At all times during Plaintiff's employment, Plaintiff has to be at 4000 Kansas Ave., N.W. Washington, D.C. at least 24-hour per day for seven days a week according to the "employment agreement" drafted by Mr. Collins.

29. In September 2009, Mr. Robinson started his job and shared duties with Mr. James Goins and got paid for $65.00 every two weeks and then to $100.00 every two weeks for 24 hours per day for 7 days a week from January 2010.

30. Mr. Goins has been promoted to do office work to assist Mr. Herbert Collins.

31. In about December 2010, Alex Robinson was left alone after Mr. Goins being promoted to Defendants' office work.   Mr. Robinson has been promoted as "ON-SITE MANAGER" and continue to serve as handyman/janitor in the premises 24-hour per day for 7 days.  He had no sick leave or vacation time at all ever since he started to work for Defendants.

32. The Defendants provided Plaintiff a tiny unit at the basement in a 4000 Kansas Ave., N.W., Washington, D.C., which market value would be equivalent to $400.00 or less per month.

33. In total, Alex Robinson has been paid at the rate of $200.00 for 80-hour work on pay stubs since December 2010 until the end of March 2013.

34. Defendants have never expressed or informed Plaintiff that his hourly rate wages at all.

35. At no time did Defendants ever pay Plaintiff his "half time" premium in the amount of $12.38/hour on the minimum wage basis per hour.

36. At all times during Robinson's employment, Robinson has been regularly and customarily worked approximately one hundred sixty eight (168) hours per week since September 2009.  At all times during Robinson's employment, Defendants paid Robinson 80 hours work for $200.00 only on the pay stubs.

37. At no time did Defendants ever pay Robinson his "half time" premium in the amount of $5.8 per hour extra in 2009 for overtime hours worked each week in excess of forty (40) hours.  Up to present, according to the calculation of 2009-2013, the unpaid overtime payments are tallied as $423,102.69.

38. In addition, Defendants owe Robinson for his minimum wages at the rate of $11.60 as of 2009, $11.81 as of 2010, $11.94 as of 2011, $11.95 as of 2012 per hour and $11.95 as of 2013 from January 2009 until March 2013.  By conservative calculation, Defendants should pay Robinson of $8,087.52 for 2009, $24,630.94 for 2010, $24,902.06 for 2011, $ 24,994.62 for 2012 and $5,530.46for 2013.

39. In total, in between 2009 to 2013, Defendants owe Plaintiff $492,362.31, not including any interest at all. See *Plaintiff's Exhibit 1.*

40. At all times during Plaintiff's employment, Defendants had knowledge of all hours Plaintiff worked and suffered or permitted Plaintiffs to work all hours alleged.

41. At no time during Plaintiffs' employment with Defendants did Plaintiffs perform work duties that would make them exempt from the overtime compensation requirement of the FLSA or DCMWA.

42. An employer who violates the FLSA and DCMWA overtime provisions are ordinarily "liable to the employee or employees affected in the amount of their unpaid minimum wages ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216 (b).

43. The award of liquidated damages is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise to the FLSA action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA." 29 U.S.C. § 260.

44. The good faith defense to liquidated damages requires "an affirmative showing of a genuine attempt to ascertain what the law requires," not simply the absence of bad faith. *Danesh v. Rite Aid Corp.*, 39 F.Supp.2d 7, 13 (D.D.C.1999) (citation omitted).

45. Defendants' failure to pay Plaintiffs minimum wages and overtime wages as required by Federal Law and District of Columbia Law was not the product of good faith and Defendants had no reasonable grounds for believing their failure to pay Plaintiffs overtime compensation at the legal rate was in compliance with Federal or District of Columbia law.

37. Defendants cannot meet their burden of an affirmative showing to avoid the imposition of liquidated damages. As such, in addition to his unpaid overtime wages, each Plaintiff is entitled to liquidated damages in an equal amount to his unpaid overtime wages under the FLSA and DCMWA..

38. The FLSA and DCMWA are "fee shifting" statutes, directing an award of payment of attorney's fees and costs by Defendants to the successful Plaintiff. As such, the FLSA provides that a court "***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (emphasis added). In contrast to other fee-shifting statutes where the award of attorney's fees and costs is discretionary with the court, an award of attorney's fees to a prevailing plaintiff in a FLSA case is mandatory. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983).

39. "[A] reasonable fee is the number of hours reasonably expended on the litigation case multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

40. The product of a reasonable number of hours times a reasonable hourly rate is known as the "lodestar". *Id.* at 434.

41. In the District of Columbia, reasonable hourly rates are based on the schedule or attorney's fee rates originally adopted by this Court in *Laffey v. American Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), commonly referred to as the "*Laffey* Matrix."

42. In addition to unpaid wages and liquidated damages in an equal amount, Plaintiffs are entitled to payment, by Defendants, of their attorney's fees and costs, using the "lodestar method" and applying the "*Laffey* Matrix."

43. On or before March 18, 2013, Defendant CAS LLC has provided a written relocation agreement to Robinson. Previously, Defendant CAS LLC has promised Plaintiff on numerous occasions during his tenure in there. Mr. Collins even told Mr.

Robinson that he was actively seeking an apartment for Mr. Robinson.

44. Mr. Robinson was left alone from February 1, 2013 until March 26, 2013 without heat or hot water during those two months.

45. When Mr. Robinson wanted to be relocated by Defendant, Defendant rescinded their offer of relocation and terminated him on the spot and demanded the keys back.

46. Mr. Robinson kept a set of keys to his apartment after he tendered his work keys back to Mr. Collins.

47. Mr. Collins changed the building entrance key code and locked Mr. Robinson out on or about March 29, 2013.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Minimum wage and Overtime)

48. Plaintiffs re-allege and reassert each and every allegation set forth in Paragraphs 1-47 above, as if each were set forth herein.

49. The FLSA mandates that an employer must pay employees minimum wage and overtime wages in the amount of one-and-one-half (1½) times the employee's regular rate of pay for all overtime hours worked each week in excess of forty (40).

50. At all times, Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 207(a)(1), and all two (2) Defendants were Plaintiffs' "employers," "joint employers" or "enterprise employer" under FLSA, 29 U.S.C. § 207(a)(2).

51. Defendants, as Plaintiff's employers, were obligated to compensate Plaintiffs at the overtime rate of one-and-one-half (1½) times Plaintiffs' regular rate of pay for all

hours worked per week in excess of forty (40).

52. As set forth above, while in Defendants' employ, Plaintiff worked many overtime hours each week in excess of forty (40) hours.

53. As set forth above, Defendants failed and refused to compensate Plaintiff properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40) hours.

54. Defendants' failure and refusal to pay Plaintiff as required by the FLSA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT II

### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Overtime)

55. Plaintiff re-allege and reassert each and every allegation set forth in Paragraphs 1-54 above, as if each were set forth herein.

56. Plaintiff was Defendants' "employee," and Defendants were Plaintiffs' "employers," "joint employer," or "enterprise employer" within the meaning of the DCMWA, D.C. Code §§ 32-1001 *et seq.*

57. Defendants, as Plaintiffs' employers under the DCMWA, were obligated to compensate Plaintiffs at the overtime rate of one-and-one-half (1½) times Plaintiff's regular rate of pay for all hours worked per week in excess of forty (40) hours.

58. As set forth above, while in Defendants' employment, Plaintiffs worked many overtime hours each week in excess of forty (40) hours.

59. As set forth above, Defendants failed and refused to compensate Plaintiff Robinson properly, and as required by the DCMWA, for all overtime hours worked each week in excess of forty (40) hours.

60. Defendants' failure and refusal to pay Plaintiff as required by the DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs, under Count II, for all unpaid overtime wages in such an amount to be proven at trial, plus liquidated damages in an equal amount, interest (both pre- and post-judgment), attorney's fees, costs, interest and any other and further relief this Court deems appropriate.

## COUNT III

### WRONGFUL EVICTION

61. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-60 above, as if each were set forth herein.

62. Plaintiff was a tenant at the Defendant's building at least after March 23, 2013 termination. Defendant Collins took his work keys away from Mr. Robinson.

63. Mr. Robinson has lost all his belongings in the apartment after his attorney notified CAS LLC's attorney about he still had a set of keys to his apartment.

64. Defendant CAS LLC has never issued any "NOTICE TO QUIT" nor demanded him to leave with ample time. CAS LLC just changed the entrance key code without providing Robinson the code.

Plaintiff requests the Court to grant him the monetary damages for his belongings of

$100,000.00 and the wrongful eviction.

## COUNT IV

### BREACH OF CONTRACT

65. Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-64 above, as if each were set forth herein.

66. Defendant CAS LLC breached the contract because more than once, Mr. Collins assured Plaintiff Robinson that he would relocate Robinson after all the tenants moved.

67. Defendant CAS LLC even presented a written relocation agreement for Robinson to sign on or about the beginning in March 2013.

68. Plaintiff received the relocation agreement from the office when he visited the office for official business.

69. On March 21, 2013, Plaintiff visited the office and inquired why and how the office has not notified him of the available apartment as of March 18, 2013.

70. Robinson could not get any answer from the office but some lame excuses.

71. Robinson did not realize that Defendant CAS LLC just wanted to use his guarding service and had never intended to carry out what they have promised Robinson at all.

72. Instead, CAS LLC terminated him on March 23, 2013, changed entrance key code locks on him and force Robinson to become homeless and jobless.

For the reasons stated above, Plaintiff demands $1,000,000.00 as damages for breach of contract.

73. Plaintiff requests a jury trial.

I hereby acknowledge that I have read the above complaint and believe that it is true to the best of my knowledge and recollection.


_____  5-3-13
Alexander N. Robinson        Date


Mr. Robinson is sworn in front of a D.C. Notary


_____  05-3-13
Notary                       Date


District of Columbia· SS
Subscribed and sworn to before me, in my presence,
this 3 day of May 2013
_____
Notary Public, D.C.
My commission expires Oct 31 2017

Respectfully Submitted,

B. Marian Chou, Esq., (#433279)
Attorney for Plaintiff Robinson
717 D Street, N.W., #415
Washington, D.C., 20004
202-783-2794; 789-1186
bmchou@attorneychou.com

Robinson v. CAS
Ex. 1

## Data of Calculation of Unpaid Salary & Overtime

| Work Years W/ CAS | Period | #1 Dates | #2 Weeks #1/7 days | #3 Total Hrs #1 x 24 hrs | #4 Reg Work Hrs #2 x 40 hrs | #5 Overtime Hrs #3 - #4 |
|---|---|---|---|---|---|---|
| 2009 | 9/1-12/31 | 122 | 17.43 | 2928 | 697.20 | 2230.80 |
| 2010 | Whole Year | 365 | 52.14 | 8760 | 2085.60 | 6674.40 |
| 2011 | Whole Year | 365 | 52.14 | 8760 | 2085.60 | 6674.40 |
| 2012 | Whole Year | 366 | 52.29 | 8784 | 2091.60 | 6692.40 |
| 2013 | 1/1-3/22 | 81 | 11.57 | 1944 | 462.80 | 1481.20 |

| | #6 Mean Hourly Wage | #7 Reg Pay #4 x #6 | #8 OT Pay (#5x#6) x1.5 | #9 Should Get Paid #7 + #8 | #10 Actual Paid | #11 Unpaid Reg & OT #9 - #10 |
|---|---|---|---|---|---|---|
| 2009 | $11.60 | $8,087.52 | $38,815.92 | $46,903.44 | $566.48 | $46,336.96 |
| 2010 | $11.81 | $24,630.94 | $118,236.99 | $142,867.93 | $2,400.00 | $140,467.93 |
| 2011 | $11.94 | $24,902.06 | $119,538.50 | $144,440.56 | $9,520.00 | $134,920.56 |
| 2012 | $11.95 | $24,994.62 | $119,961.27 | $144,955.89 | $5,200.00 | $139,755.89 |
| 2013 | $11.95 | $5,530.46 | $26,550.51 | $32,080.97 | $1,200.00 | $30,880.97 |

**Total Unpaid (Regular & Overtime):**   **$492,362.31**

1. March 22, 2013 was the termination day.
2. Mean Hourly Wages (except 2013) are based on Occupational Employment Statistics ( Janitors) of United States Department of Labor.